**Dirk WEBSTER, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 1079S286.

Supreme Court of Indiana.

Dec. 30, 1980.

Terry C. Gray, Gary, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal by Dirk Webster from his conviction by a Lake County Superior Court jury on two counts of murder (Ind.Code § 35–42–1–1 [1]). Webster was sentenced to consecutive forty–five year terms on each count.

The appellant presents nine issues for review, but because of our disposition of this case we only discuss one claim—that the evidence presented by the State was insufficient to support a finding of guilt beyond a reasonable doubt.

The uncontroverted evidence against the defendant which was properly before the jury is set out below.

Betty DeBowles was last seen on December 16, 1977, and was found dead two days later in a car registered to Robin Thomas. Two spent bullets were found in the car. DeBowles died from a bullet wound to the brain. The bullet removed from DeBowles' brain during the autopsy was a .32 caliber bullet. State's Exhibits 1 through 5 were photographs of DeBowles' body, the car in which it was found, and a bullet hole inside the car; State's Exhibits 6 and 7 were the bullets recovered from the car.

Robin Thomas was last seen on December 16, 1977. A passer–by discovered his body in a drainage ditch and also found a gun nearby on April 9, 1978.

Photographs of the drainage ditch in which Thomas' body was found, and a photograph of the body were introduced into evidence. The gun was also admitted over objection as State's Exhibit 10, subject to being connected to the defendant, Webster, by later evidence.

Thomas died from drowning or exposure. Lacerations on his body would not have been fatal alone.

The jury heard the testimony of a firearms expert who had examined the bullets found in the car in which DeBowles' body was found and Exhibit 10, the gun found near Thomas' body. He testified that neither bullet was fired from the gun, and that each bullet came from a separate gun.

A second firearms expert told the jury that he had examined the bullet removed from DeBowles' brain but that because the bullet was mutilated, he could not determine whether it came from Exhibit 10.

Aurelius James Allen testified that he had been indicted for the two murders and that he knew the defendant. He said that he had entered into a written plea bargain arrangement under which, in return for his plea of guilty and his promise to testify against Garland Hicks, who had also been indicted for the murders, he received two six–year terms for involuntary manslaughter, and one six–year term for a robbery, and another robbery charge was dismissed. He also agreed during direct examination that at his guilty plea hearing, the judge told him that he was also to testify against Dirk Webster, and O. D. Webster, the fourth man indicted for the two murders.

The jury heard Allen testify that he had received a letter, later admitted over objection as State's Exhibit 11, while he was in jail on these charges, and that he had turned this letter over to the prosecutor. The letter reads:

"Hey, Rap, I read of your unfortunate situation. So, I have to write and see if you're still cool. We both know what happened to Pee Wee. So don't let those Honkies make a snitch out of you. Vette's life was spared, because we was cool. But Harpo felt different. Also, let me remind you of this. The Pigs figure

you and Vette were up on this from Jump. So, if you decide to flip, the weight can be shifted once again. If you try and jam us, you'll only jam yourself or Vette. And that's your main concern; isn't it."

He was asked if he recognized the handwriting on the letter and he said that he did not recognize it. In response to the prosecutor's questions regarding a prior statement in which he had purportedly identified the handwriting as that of Dirk Webster, Allen answered that he did not remember making the earlier statement. The jury also heard him testify that he did not remember having made statements about the murders at his guilty plea hearings and on other occasions before this trial.

The jury heard other evidence in connection with Allen's earlier statements, which we will discuss later.

A Lake County policeman testified that he had booked Webster on December 13, 1979, and a booking card bearing his signature was admitted into evidence. The jury heard the testimony of a handwriting expert who was asked to examine the handwriting on Exhibit 11 to determine if it was the same as the handwriting in Webster's booking card signature, and he testified that he was unable to form a judgment based on the samples. The trial judge, upon the stipulation of both parties, informed the jury that he had ordered the defendant to submit a handwriting exemplar for the purpose of comparing it with State's Exhibit 11, and that Webster had refused to comply with the order.

This was the substantive evidence which the jury could consider in determining the guilt of Dirk Webster.

We have said many times in reviewing sufficiency claims that we will not usurp the jury's function of weighing the evidence and judging the credibility of witnesses. We will only examine the evidence and reasonable inferences to be made therefrom that support the verdict. If there is evidence of probative value from which the jury could conclude that the defendant was guilty beyond a reasonable doubt, we will not disturb the verdict; conversely, if there is no such evidence of probative value in the record, we have not only the power and authority, but the solemn duty to set aside the verdict. *Osbon v. State*, (1938) 213 Ind. 413, 13 N.E.2d 223; *Taylor v. State*, (1973) 260 Ind. 64, 291 N.E.2d 890.

Having reviewed the sufficiency claim in this light, we must conclude that the substantive evidence which the jury could consider does not support a conclusion of guilt.

The most that the jury could have concluded is that DeBowles was shot to death and Thomas died of drowning and exposure; and that witness Allen was involved in the murders. The gun, Exhibit 10, was not connected to Webster by any substantive evidence. Even if we could infer that the jury made the deduction from Webster's refusal to furnish the handwriting exemplar that he indeed wrote the letter to Allen, this conclusion could do no more than raise a remote suspicion that Webster was involved. A mere suspicion or possibility of guilt, we have said many times, falls far short of satisfying the State's burden of proving guilt beyond a reasonable doubt. *Easton v. State*, (1967) 248 Ind. 338, 228 N.E.2d 6; *Floyd v. State*, (1980) Ind.App., 399 N.E.2d 449.

The State contends that there is additional evidence beyond that recited above, which serves to support the verdict of guilty. The State points out that the jury also heard in the course of the direct examination of the witness Aurelius Allen, earlier testimony which he had given in the course of his own guilty plea hearing, the bail hearing of O. D. Webster, and the trial of Garland Hicks. This testimony was read to the jury by the prosecution, initially to refresh Allen's recollection, and then to impeach him when he surprised the prosecution by stating that he did not remember the earlier testimony. It amounted to a detailed description of the events leading up to the murders, and the murders themselves, including the statements that appellant shot DeBowles three times, and helped Garland Hicks drown Thomas.

If the jurors had been permitted to consider Allen's prior testimony as substantive evidence, and if the jurors had believed it, they could have concluded beyond a reasonable doubt that Webster had participated in the murders. If the jurors had been permitted the use of that prior testimony as substantive evidence, the avenue would be open to this Court to consider it as evidence supporting the verdict in resolving the sufficiency issue on appeal. However, the jurors were expressly precluded from considering that earlier testimony as substantive evidence by the following instruction:

"During the course of this trial, certain questions were propounded to witness, Aurelius James Allen, by the Prosecutor regarding prior inconsistent statements allegedly made by him to which he almost always answered 'I don't remember.' The questions so propounded were not evidence and are not to be considered by you as evidence. Subsequently, the Prosecutors were permitted to read into evidence statements that were agreed by the parties to have been made by the witness, Aurelius James Allen, prior to this trial. The statements were admitted by the Court for limited purpose of attempting to impeach or impugn the veracity of truthfulness of that witness and for no other purpose. They may not be considered by you as evidence against the Defendant, Dirk Webster, who was not present when the statements were made, and was denied meaningful cross examination of the witness during the course of this trial."

On appeal, this Court must presume that the jury obeyed the trial court's instructions in reaching its verdict. *Tyson v. State*, (1979) Ind., 386 N.E.2d 1185. When a jury has been instructed to consider evidence on no other issue except impeachment, we will assume that the jury followed the instructions. *Brown v. State*, (1964) 245 Ind 604, 201 N.E.2d 281. Moreover, in reviewing sufficiency claims, we must exclude from our consideration any evidence that was introduced to impeach the credibility of a witness. Such evidence is not a part of the substantive case. *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657, 658, citing *McAdams v. State*, (1948) 226 Ind. 403, 81 N.E.2d 671. See also, *Sickles v. Greybar*, (3rd Cir. 1955) 219 F.2d 847, *cert. den.*, 350 U.S. 827, 76 S.Ct. 57, 100 L.Ed. 739, *reh. den.*, 350 U.S. 905, 76 S.Ct. 176, 100 L.Ed. 794, and cases cited therein. Consequently, Allen's prior testimony is not, as contended by the State, additional evidence which may be considered by this Court as supporting the verdict of guilty.

We, therefore, reverse the conviction, and conclude that there is justification for retrial in this case. In the typical case of a reversal based on the insufficiency of the evidence, the double jeopardy clause of the Fifth Amendment, applicable to the states by the Fourteenth Amendment, requires a discharge of the defendant. *Burks v. United States*, (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1. This case is distinguishable from *Burks*, however. In that case, the defendant's conviction for robbery following a trial in which he had raised the defense of insanity was reversed by the Sixth Circuit Court of Appeals because the government had not met its burden of proving sanity beyond a reasonable doubt. The Court of Appeals remanded the case to the district court where the defendant was to have "a directed verdict of acquittal unless the government presents sufficient evidence to carry its burden on the issue of defendant's sanity." *Id.* at 2144. The United States Supreme Court reversed this aspect of the case, holding that a second trial is precluded once a reviewing court has found the evidence legally insufficient and that the only remedy available to a reviewing court is a direction of a judgment of acquittal. The underlying rationale for this approach is that the prosecution "has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government's case was so lacking that it should not have even been *submitted* to the jury." (Original emphasis.) *Id.* at 2150, 2151.

In the present case we cannot say that the State's case was lacking in this sense. This case, as presented at trial, would have been sufficient, if believed by the jury, except for the limitation on the use of Allen's prior testimony. That limitation arose when the trial judge determined that he would give the final instruction restricting the jury's use of that testimony. Up to that point in time the prosecution would have been warranted to a reasonable degree of legal certainty in believing that this evidence would come in as part of the substantive case against appellant Webster under the ruling in *Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482, and *Stone v. State* (1978) Ind., 377 N.E.2d 1372. Cf. *Torrence v. State*, (1975) 263 Ind. 202, 328 N.E.2d 214. It was the trial judge's decision to give the restrictive final instruction which in fact and in point of time rendered the prosecution's case insufficient to convict. If that ruling had been made earlier the prosecution would have had an opportunity at the trial to offer other available proof to bolster its case.

Since we do not believe that the *Burks* rationale applies here, we order retrial.

GIVAN C. J., and HUNTER and PIVARNIK, JJ., concur.

PRENTICE, J., dissents with opinion.

PRENTICE, Justice, concurring and dissenting.

I am in agreement with the majority holding reversing the judgment. However, I do not agree that the appellant can be retried, consistently with the proscription of *Burks v. United States*, (1978) 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1. It is the viewpoint of the majority that, but for the lateness of the admonition limiting the application of Allen's prior testimony, the State may have presented additional incriminating evidence and that it was, therefore, somehow denied a fair opportunity to offer its best evidence. The same could as well be said under innumerable circumstances where the verdict was an acquittal. Certainly when the State's best, and perhaps its only evidence

of guilt is excluded by the court, when tendered, the State has been denied its opportunity. If that exclusion was error, the denial has been unfair, in the sense that it was not according to the rules. Nevertheless, the acquitted defendant cannot be retried—even though the ruling excluding the evidence be later reversed as a reversed question. I do not believe that the *Burks* opinion permits speculation as to why sufficient substantive evidence was not presented or upon what additional evidence might be forthcoming if the prosecution is given another try. Rather, it is my opinion that the rationale behind the double jeopardy proscription is simply that, considering the resources available to the State and the grave injustice done one who is erroneously brought to trial, it behooves the State to prosecute only upon firm evidence and then to bring forth its best case or suffer the consequences. Accordingly, I would order an acquittal in this case.