**Dirk WEBSTER, Petitioner-Appellant,**

**v.**

**Jack R. DUCKWORTH, Warden and the Indiana Attorney General, Respondents-Appellees.**

**No. 83–3096.**

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1985.

Decided July 11, 1985.

Rehearing and Rehearing En Banc Denied Sept. 11, 1985.

Order Amending Opinion Sept. 12, 1985.

J. Kevin McCall, Jenner & Block, Chicago, Ill., for petitioner-appellant.

Robert B. Wente, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and TIMBERS, Senior Circuit Judge.*

TIMBERS, Senior Circuit Judge.

The question presented by this appeal from a judgment denying a state prisoner's petition for a writ of habeas corpus is whether, following the highest state court's reversal of the prisoner's first degree murder conviction on the ground of the insufficiency of the evidence, the double jeopardy clause of the Fifth Amendment to the United States Constitution barred retrial of the prisoner on the same charges. We hold, on the authority of *Burks v. United States*, 437 U.S. 1 (1978), that the double jeopardy clause did bar retrial.

Dirk Webster appeals from a judgment entered November 1, 1983 [1] in the Northern District of Indiana, Allen Sharp, *Chief District Judge*, 572 F.Supp. 1271, denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982). Appellant was convicted on two counts of first degree murder in the Superior Court of Lake County, Indiana, and was sentenced to two consecutive 45 year terms of imprisonment. The Supreme Court of Indiana reversed and ordered a retrial, one justice dissenting with respect to ordering a new trial. *Webster v. State*, 274 Ind. 668, 673, 413 N.E.2d 898, 902 (1980) (*Webster I*). Appellant again was convicted and again was sentenced to two consecutive 45 year terms of imprisonment. The Supreme Court of Indiana, one justice dissenting, affirmed appellant's second conviction. —— Ind. ——, 442 N.E.2d 1034 (1982) (*Webster II*). He currently is serving his sentence.

Appellant argues that, since the Supreme Court of Indiana reversed his first conviction on the ground of the insufficiency of the evidence, under the United States Supreme Court's holding in *Burks, supra*, the double jeopardy clause of the Fifth Amendment barred retrial and the conviction resulting from the retrial was a nullity. The district court held that appellant's first conviction was reversed because of trial error, rather than insufficient evidence, and that *Burks* did not bar retrial.

For the reasons stated below, we reverse the judgment of the district court and remand the case to that court with instructions to issue the writ of habeas corpus.

I.

We summarize those facts and Indiana state court proceedings believed necessary to an understanding of the legal issues raised on appeal.

(A) **First Trial**

Betty DeBowles and Robin Thomas were last seen alive on December 16, 1977. Betty's body was found two days later, slumped in the front seat of Robin's car which was parked in a secluded area. Bet-

---

* The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation.

1. We do not view lightly the elapse of eighteen months between the date of entry of judgment in the district court (November 1, 1983) and the date the appeal was argued in our Court (April 23, 1985). The delay in large measure was caused by repeated extensions granted to appellant of the time within which to file his brief, during the period he was acting pro se. We do note one redeeming aspect of the delay in getting the case to us for decision: once counsel appointed by our Court, Jerold S. Solovy, Esq. and J. Kevin McCall, Esq., appeared to represent appellant on appeal, he had the benefit of professional services of the highest order in the preparation of his briefs and the argument of his appeal.

ty had been shot once in the head. Two additional spent bullets were recovered from the car. Robin's body was not discovered until April 9, 1978 when a passer-by saw his body lying in a drainage ditch. Although the body had lacerations on the chest and throat, it was later determined that Robin died from drowning or exposure. A .32 caliber revolver was found near Robin's body. A short time after the discovery of Robin's body, the police arrested appellant Dirk Webster, Garland Hicks, Aurelius James Allen and O.D. Webster, the latter being appellant's father. The four men were indicted for the two murders.

Pursuant to a written plea agreement, Allen agreed to testify against Hicks and to plead guilty to two counts of involuntary manslaughter and one count of robbery. He was sentenced to three concurrent six-year terms of imprisonment. A second robbery count was dismissed. Allen testified that he was told by the judge at his plea hearing that he also was expected to testify against appellant and O.D. Webster, to which he agreed.

Appellant's first trial commenced before a jury on March 26, 1979 in the Superior Court of Lake County, Indiana. On the first day of trial, the state called Betty's mother. She testified regarding the last time she saw her daughter alive and identified a photograph of her daughter. The photograph was admitted in evidence. The state's second witness was a sergeant in the Gary, Indiana, police department. He testified as to what he saw when he arrived at the scene of the murder on December 18, 1977. He authenticated a photograph of Betty's body as it was found by the police. This photograph also was admitted in evidence, as were other photographs of the body and the surroundings. The sergeant testified that he found two spent bullets in the car, in addition to the bullet that remained in Betty's body, but that no gun was found.

The state next called the Chief Investigator of the Lake County coroner's office. He authenticated a photograph of Robin's body as it was found on April 9, 1978. He testified about the condition of Robin's body, stating that, although it was partially decomposed, lacerations on the chest and neck were discernible.

Also on the first day of trial, the state produced the passer-by who discovered Robin's body and the .32 caliber revolver which was found nearby. Another Gary police officer testified that the revolver had two spent and four live rounds in the cylinder. The revolver was admitted in evidence. Robin's father testified regarding his identification of his son's body and as to specific items of jewelry that were missing when the body was found.

The state then called to the stand Aurelius James Allen, one of appellant's co-defendants who had pleaded guilty to lesser offenses. Allen answered the questions put to him by the prosecutor regarding his name and address; the fact of his incarceration; his indictment for the murders of Betty and Robin; his guilty plea; and his agreement to testify against appellant, Hicks and O.D. Webster in return for a relatively light sentence. The prosecutor showed Allen a handwritten unsigned letter which Allen identified as one he received while in prison the previous summer. The letter, which later was admitted in evidence, stated:

"Hey Rap,
I read of your unfortunate situation so I had to write an [sic] see if you're still cool. We both know what happened to pee-wee so don't let these honkies make a snitch out of you. Vette's life was spared because we was cool but harpo felt different. Also let me remind you of this, The pigs figure you & Vette were up on this from jump so if you decide to flip the weight can be shifted once again. If you try an [sic] jam us, you'll only jam yourself or 'Vette' an [sic] that's your main concern isn't it?" (emphasis in original)

The prosecutor asked Allen if he could identify the handwriting on the letter or the envelope. Allen said he could not. The prosecutor questioned Allen regarding prior statements in which Allen identified the handwriting as that of Dirk Webster. Allen responded that he did not recall making the statements.

The prosecutor then questioned Allen regarding his relationships with appellant, Robin and Yvette Thomas. The latter was known as "Vette", and was Robin's sister-in-law. Allen testified that he knew both appellant and Robin, but answered "I don't know" or "I don't remember" to every other question. He testified that he did not recall ever having given any other answers to the same questions at an earlier time.

Allen was shown a copy of his plea agreement and was asked if he recognized it. He said he did. He was asked if he recalled testifying against Garland Hicks. He said "Yes". He was asked if he recalled being told by the judge at his plea hearing that he also was expected to testify against the two Websters as part of the plea bargain. He said that he did not remember.

At that point, the jury was excused. A conference between the court and counsel was held in chambers, on the record. Appellant's counsel objected that the witness was being intimidated by an implied threat to revoke his plea agreement, that he faced a potential contempt charge, and that he should be afforded counsel. The court decided that it would instruct Allen that, if he continued to refuse to testify, his plea agreement would be breached and he would be required to stand trial for the two murders. Also during the chambers conference the court indicated to the prosecutor that, as long as Allen said he did not remember, as opposed to refusing to testify, the prosecutor would be permitted to use Allen's prior statements for impeachment purposes.[2]

The jury returned to the courtroom. The state continued its examination of Allen. The witness was asked a long series of questions regarding his prior statements implicating appellant in the two murders. To each question, Allen answered "I don't remember". The questioning occasionally took the form of a direct question, but mostly it consisted of the prosecutor's reading questions and answers from Allen's prior testimony and then asking the witness if he recalled having been asked that question and having given that answer.

After a short time, appellant's counsel requested the court to instruct the jury to the effect that prior inconsistent statements could be used for impeachment purposes only, but not as substantive evidence. The court declined to give the instruction, stating that it was "premature at this point."

The questioning continued in the manner described for some period of time, with Allen continuing to state that he did not recall having been asked the questions and having given the answers read to him. The questions read by the prosecutor and the answers previously given by the witness described for the jury in great detail the events that took place on the night of the murders. After the prosecutor read from the witness's testimony at his plea hearing, the prosecutor indicated that it was late in the day and stated "I hate to start this other impeachment." The court then adjourned.

On the second day of the trial, the county coroner testified regarding his autopsy findings with respect to the body of Robin. They related exclusively to the condition of the body. On cross-examination, the coroner testified that he could not state definitely the cause of death, but that, in his opinion, death was caused by either drowning or exposure. The Chief Investigator for the Lake County Prosecutor's Office was called to testify regarding a fruitless search for weapons in the vicinity where Betty's body had been found.

The state presented a booking card which contained the signature of appellant. It was admitted in evidence after being authenticated by an officer at the Lake County jail. The prosecutor called a handwriting expert employed by the Indiana State Police. He testified that he had compared Dirk Webster's signature on the booking card with the handwriting on the letter received by Allen while in prison. At that point in the trial the letter had not been admitted in evidence. He stated that, while the two samples displayed "limited similarities", he could not draw a definite conclusion because the sample on the booking card was too limited. He also testified that he found no "unlikes". A stipulation later was read to the jury stating that appellant had refused to give a handwriting exemplar for the purpose of comparing it with the handwriting on the letter.

A pathologist testified that Betty died from a gunshot wound to the head with lacerations of the brain. A ballistics expert testified that the two spent .32 caliber bullets found near Betty's body were not fired from the same gun that had caused the wound to her head and that neither of the two spent bullets was fired from the gun found near Robin's body. Another expert testified that the bullet recovered from Betty's body was too mutilated to be identified as to source.

**2.** The importance of this statement and its timing will be referred to *infra* at page 1214.

Allen was recalled to the stand. Outside of the presence of the jury, he testified that he had conferred with counsel and that he understood the possible consequences of his refusal to testify. The jury returned to the courtroom. The questioning resumed along the same lines as the day before. Again, Allen repeatedly testified that he could not recall having been asked the earlier questions or having given the answers read to him. This line of questioning continued for a considerable time, until the prosecutor had completed reading all of Allen's prior testimony. Appellant's counsel attempted to cross-examine the witness, but he continued to respond to every question with "I don't remember". Court was adjourned for the day.

After the jury had been excused, appellant's counsel requested that all of Allen's testimony be stricken from the record on the ground that the witness's inability to remember violated appellant's Sixth Amendment right to confront the witnesses against him. A lengthy discussion ensued. The prosecutor argued that the prior testimony was permissible both for impeachment purposes and as substantive evidence. The court deferred ruling on the matter, but stated that it was inclined to exclude the evidence because appellant had been denied a meaningful cross-examination.

The third day of trial began with Allen again on the witness stand. His testimony followed the pattern of the previous two days. Appellant's counsel made a further, fruitless attempt to cross-examine the witness. The jury was excused for a lunch recess. The court heard more argument on the admissibility of Allen's previous testimony. The court again deferred ruling on the matter, again stating, however, that it was inclined to exclude the evidence.

After the lunch recess, the letter received by Allen while in prison was received in evidence over the objection of appellant. Robin's mother was recalled. She testified that her daughter-in-law, Yvette, was acquainted with Allen. At the conclusion of her testimony, a bench conference was held. The prosecutor stated to the court "This is the deciding time." The court, however, continued to defer ruling. Instead, the court permitted the state to put on more of what the court termed "impeachment material". The prosecutor then read to the jury from the authenticated transcripts of Allen's testimony at his plea hearing, O.D. Webster's bail hearing and Garland Hicks's trial.

After reading substantial portions of the earlier testimony to the jury, the prosecution rested. Immediately thereafter, without putting on any evidence, the defense rested. The jury was excused. Appellant's counsel moved for a directed verdict on the ground of the insufficiency of the evidence. The prosecutor summarized the evidence against appellant as follows: that the killings were homicides, that Allen was a participant, that appellant was Allen's friend and that the letter to Allen in prison could imply that appellant was a participant. The prosecutor did not mention Allen's previous testimony. The court denied the motion for a directed verdict. The court asked counsel for appellant and the prosecutor if they had received the proposed jury instructions and whether they had any objections. No objections were made.

The jury was instructed, with no objection being interposed by either side, as follows, inter alia:

"[T]he prosecutors were permitted to read into evidence statements that were agreed by the parties to have been made by the witness, Aurelius James Allen, prior to this trial. The statements were admitted by the Court for the limited purpose of attempting to impeach or impugn the veracity or truthfulness of that witness and for no other purpose. They may not be considered by you as evidence against the defendant, Dirk Webster, who was not present when the statements were made, and was denied meaningful cross examination of the witness during the course of this trial."

Appellant subsequently was convicted by the jury on two counts of first degree murder and was sentenced to two consecutive 45 year terms of imprisonment.

### (B) First Appeal (*Webster I*)

On direct appeal to the Supreme Court of Indiana, appellant raised nine issues for review. In its opinion, however, the court addressed only "one claim—that the evidence presented by the State was insufficient to support a finding of guilt beyond a reasonable doubt." *Webster I, supra,* 274 Ind. at 669, 413 N.E.2d at 899. After reviewing the evidence adduced at trial, the

court set forth the standard of review applicable on appeal as follows:

> "We have said many times in reviewing sufficiency claims that we will not usurp the jury's function of weighing the evidence and judging the credibility of witnesses. We will only examine the evidence and reasonable inferences to be made therefrom that support the verdict. If there is evidence of probative value from which the jury could conclude that the defendant was guilty beyond a reasonable doubt, we will not disturb the verdict; conversely, if there is no such evidence of probative value in the record, we have not only the power and authority, but the solemn duty to set aside the verdict." 274 Ind. at 671, 413 N.E.2d at 900.

The court examined the sufficiency claim under this standard and reversed the conviction, concluding that "the substantive evidence which the jury could consider does not support a conclusion of guilt." *Id.*

In reaching this conclusion, the court held that, even if the jury found that appellant wrote the threatening letter to Allen, the letter "could do no more than raise a remote suspicion that Webster was involved" and fell "far short of satisfying the State's burden of proving guilt beyond a reasonable doubt." 274 Ind. at 672, 413 N.E.2d at 900.

The court discussed Allen's prior testimony, describing it as having been used to impeach the witness. *Id.* The court quoted from the trial court's instruction to the jury on the subject of Allen's testimony and stated "in reviewing sufficiency claims, we must exclude from our consideration any evidence that was introduced to impeach the credibility of a witness. Such evidence is not a part of the substantive case.... *Consequently, Allen's prior testimony is not, as contended by the State, additional evidence which may be considered by this Court as supporting the verdict of guilty.*" 274 Ind. at 673, 413 N.E.2d at 901 (emphasis added).[3]

The court, with one justice dissenting,[4] held that appellant could be retried without violating the double jeopardy clause. The court distinguished *Burks v. United States*, 437 U.S. 1 (1978), holding that

> "It was the trial judge's decision to give the restrictive final instruction which in fact and in point of time rendered the prosecution's case insufficient to convict. If that ruling had been made earlier the prosecution would have had the opportunity at the trial to offer other available proof to bolster its case." 274 Ind. at 674, 413 N.E.2d at 902.

The court did not specify what "other available proof" the prosecution could have offered had the ruling been made earlier, nor did the court indicate that the trial court's instruction was erroneous. It stated only that the prosecution was warranted in believing that, ultimately, the prior testimony would be admitted as substantive evidence. *Id.*

**(C) Second Trial and Appeal (*Webster II*)**

At appellant's second trial, more than a year after the first, Allen was able to recall the events leading up to and including the murders of Betty and Robin. Appellant was convicted again on both counts and again was sentenced to two consecutive 45 year terms of imprisonment.

Appellant appealed again to the Supreme Court of Indiana. He raised again the double jeopardy claim and argued that the evidence still was insufficient to sustain the conviction despite Allen's testimony. The court affirmed the conviction, again with one justice dissenting. *Webster II, supra.* In rejecting appellant's double jeopardy claim, the court held that it had already been decided in *Webster I, supra*, that *Burks* was distinguishable because the state did not have " 'one fair opportunity to offer whatever proof it could assemble' ". —— Ind. at ——, 442 N.E.2d at 1034–35, quoting *Burks, supra*, 437 U.S. at 16. The court also rejected appellant's claim that the testimony of Allen as an accomplice was not credible and that the second con-

---

**3.** The State again attempted, in its oral argument before us, to rely on the impeachment material as substantive evidence. As indicated *infra*, p. 1213, we agree with the Supreme Court of Indiana on this point.

**4.** In the view of the dissenting justice,

"the rationale behind the double jeopardy proscription is simply that, considering the resources available to the State and the grave injustice done one who is erroneously brought to trial, it behooves the State to prosecute only upon firm evidence and then to bring forth its best case or suffer the consequences." *Webster I, supra*, 274 Ind. at 675, 413 N.E.2d at 902 (Prentice, J., dissenting in part).

viction should be reversed for insufficient evidence. —— Ind. at ——, 442 N.E.2d at 1035.

This completes our summary of proceedings in the Indiana state courts. We turn now to proceedings in the federal courts.

## II.

Appellant, acting pro se with the aid of a fellow prisoner, filed the instant petition for a writ of habeas corpus in the Northern District of Indiana on July 11, 1983. On November 1, the district court, after reviewing the complete state court record and finding that state remedies had been exhausted, denied the writ. The court held that the second trial and conviction were not barred by the double jeopardy clause because appellant's first conviction was reversed by the Supreme Court of Indiana for trial error, rather than for insufficient evidence, and the trial court had denied the prosecution "one fair opportunity to present its evidence." *Webster v. Duckworth*, S. 83–306, slip op. at 3 (N.D.Ind. 1983). The court went on to state that "This court would be less than candid if it were to say that this is not a close call."

Our decision on this appeal turns on the answers to two questions: (A) whether the Supreme Court of Indiana reversed appellant's first conviction on the ground of the insufficiency of the evidence or for trial error; and (B) whether, under recent United States Supreme Court interpretations of the double jeopardy clause, an accused may be retried after it has been held that the substantive evidence adduced at his first trial was insufficient to sustain a verdict of guilty beyond a reasonable doubt when the trial court erroneously excluded prosecution evidence. We shall discuss these questions seriatim.

### (A) **Insufficiency Of The Evidence vs. Trial Error**

■ It is clear that the Supreme Court of Indiana reversed appellant's conviction because the evidence was insufficient to sustain the verdict. The court in *Webster I*

repeatedly and expressly stated just that. Indeed it limited its analysis to "one claim—that the evidence presented by the State was insufficient to support a finding of guilt beyond a reasonable doubt." *Webster I, supra*, 274 Ind. at 669, 413 N.E.2d at 899. The state argues that the evidence was insufficient because the trial court erroneously excluded prosecution evidence. The state therefore contends that appellant's conviction was reversed for trial error rather than for insufficient evidence. We believe that to state this proposition is to reject it. Clearly, appellant did not seek, nor could he have obtained, reversal of his conviction on the ground that the court excluded *prosecution* evidence. There can be no doubt that appellant's conviction was reversed for insufficient evidence and for no other reason. We turn next to the question of whether the Supreme Court of Indiana held that the insufficiency of the evidence was caused by trial court error, either in excluding prosecution evidence or in delaying in ruling on the matter, and, if so, whether it is constitutionally permissible for a reviewing court to examine the reason for the insufficiency in ordering a retrial.

First, the Supreme Court of Indiana did not hold expressly in either *Webster I* or *Webster II* that the trial court erroneously excluded Allen's prior testimony. Moreover, if the court had believed that the instruction regarding Allen's testimony was erroneous, it is only reasonable to assume that it would have said so.

Second, the state failed to object to the instruction regarding Allen's testimony either when it was first proposed or when it was given to the jury. Under Indiana law, this constituted a waiver of any objection to the instruction. Ind.R.Cr.P. 8(B).

Third, the Supreme Court of Indiana subsequently held that, when a witness denies having made a prior statement or cannot remember having made it, the statement is inadmissible as substantive evidence. *Watkins v. State*, —— Ind. ——, ——, 446 N.E.2d 949, 960 (1983); *see also Carter v. State*, —— Ind.App. ——, ——, 412 N.E.2d 825, 828–31 (1980).[5] In holding as it did in *Watkins*,

---

. **5.** In *Nelson v. O'Neil*, 402 U.S. 622 (1971), O'Neil had been convicted after a prior inculpatory statement was admitted against his codefendant, despite the codefendant's denial of having made the statement. The Supreme Court held that O'Neil's Sixth Amendment right to confront the

witness against him was not violated, since the codefendant "testified at length, and favorably to the defendant, concerning the underlying acts." *Id.* at 628; *see also United States v. Baker*, 722 F.2d 343, 348 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1312 (1984). In the

the court did not find it necessary even to mention its holding in *Webster I.* The earlier Indiana cases relied on by the state in its argument in the trial court in support of the admissibility of Allen's prior testimony clearly are distinguishable. In both *Patterson v. State,* 263 Ind. 55, 324 N.E.2d 482 (1975), and *Stone v. State,* 268 Ind. 672, 377 N.E.2d 1372 (1978), the witnesses neither denied making the statements nor failed to remember making them.

We conclude that the Supreme Court of Indiana did not hold that the trial court erred in excluding Allen's prior statements as substantive evidence.

The state also argues that the Supreme Court of Indiana, in ordering a retrial in *Webster I,* held that the trial court erred in deferring a ruling on the admissibility of the Allen testimony until the close of the trial. *Webster I, supra,* 274 Ind. at 674, 413 N.E.2d at 902. According to the State's interpretation of that decision, the court held that the failure on the part of the trial court to rule earlier on that matter caused the state justifiably to believe that the evidence would be admitted. Under this interpretation of *Webster I,* this belief on the part of the state caused it to withhold additional evidence in its possession, thereby depriving it of a "fair" opportunity to present its best case. According to the state, this constituted "trial error". We are not persuaded by the state's reasoning.

First, the state was on notice from the first day of the trial that there was a possibility that Allen's prior testimony would not be admitted as substantive evidence. The point repeatedly was argued by counsel for both sides. Each time, the trial court indicated, without ruling, that it was inclined to exclude the evidence. At no time did the prosecution object on the ground that failure to rule on the matter immediately would be prejudicial to the state. Second, it is difficult to understand why the state, especially under these circumstances, would withhold any additional evidence it might have in reliance on the mere possibility that Allen's prior testimony would be admitted. Third, at appellant's second trial no substantial additional evidence beyond Allen's direct testimony [6] was introduced, despite the reasonable assumption that Allen's credibility would be sharply impeached. We fail to see how this so-called "trial error" could have prejudiced the state.

Nevertheless, because the Supreme Court of Indiana's opinion is ambiguous, we accept the state's interpretation of *Webster I* and assume that the Supreme Court of Indiana held that the delay in ruling on the evidentiary question was error prejudicial to the state. In such a situation we hold that, regardless of whether a trial court commits error that results in prejudice *only to the prosecution,* if the conviction is reversed *for insufficient evidence* the reviewing court is barred by the double jeopardy clause from ordering a retrial.

## (B) Recent Supreme Court Decisions On Double Jeopardy

In *Burks* the Supreme Court held that the double jeopardy clause prohibits

---

instant case, Allen could not recall making the earlier statements nor could he recall the underlying facts. We need not decide, because it is not presented here, whether appellant's right to confrontation would have been violated if the prior testimony had been admitted. For purposes of this appeal, the only question is whether the Supreme Court of Indiana held that *exclusion* of the evidence by the trial court was error. It did not so hold.

6. Allen's testimony at the second trial tended to prove the following: appellant, Allen and Hicks were employed as "runners" by O.D. Webster. Allen on several occasions delivered drugs to Robin Thomas and collected money from him after the sales were made. Robin kept a "commission" out of the proceeds, and Allen delivered the balance to O.D. Webster.

On the night of the murders, appellant, Allen and Hicks were dispatched by O.D. Webster to go to Robin's house and to bring him to the elder Webster for the purpose of settling a debt of seven or eight hundred dollars that Robin owed his supplier. When they arrived at the house, they were admitted by Yvette, Robin's sister-in-law with whom Allen had a relationship. The three men seized Robin and Betty, who were in Robin's bedroom. After some discussion, Allen persuaded the others to allow Yvette to remain behind. All three men were armed.

Robin and Betty were delivered to O.D. Webster and an argument between Robin and O.D. ensued. After a while, Robin and Betty were put back in the car and driven to a secluded area. As Robin was taken from the car, he struggled with appellant. Hicks intervened, and Robin was restrained. Appellant then fired three shots at Betty. Robin struggled free and fled toward a nearby drainage ditch. He was caught by appellant and Hicks. Hicks, who had lost his revolver, cut Robin with a broken bottle, and appellant held his head under the water until he was dead. The three men fled on foot and were picked up by O.D. Webster who had parked nearby.

retrial when a conviction is reversed for insufficient evidence as opposed to "trial error". 437 U.S. at 16. "Trial error" was defined as "a determination that a defendant has been *convicted* through a judicial process which is defective in some fundamental respect, *e.g.,* incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct." *Id.* at 15 (emphasis added). "Trial error", in the double jeopardy analysis, clearly means error that prejudices the defendant, not the state. *Id.; see also Sumpter v. DeGroote,* 552 F.2d 1206, 1211–12 (7th Cir.1977).

The state attempts to distinguish *Burks* by arguing that the insufficiency of the evidence in that case was not caused by trial error. The Court stated in a footnote in *Burks* that "There is no claim in this case that the trial court committed error by excluding prosecution evidence which, if received, would have rebutted any claim of evidentiary insufficiency." 437 U.S. at 5 n. 4. The Court did not explain in *Burks* what difference this might have made in the result. In *Sanabria v. United States,* 437 U.S. 54 (1978), however, decided the same day as *Burks,* the Court held that an erroneous evidentiary ruling that led to an acquittal for insufficient evidence barred on double jeopardy grounds a subsequent prosecution on the same charge. *Id.* at 68–69. The footnote in *Burks* quite plainly was intended only to distinguish the factual settings of the two cases.

 The state attempts to distinguish *Sanabria* by arguing that the instant case involves a *conviction* and subsequent reversal, rather than an acquittal. A reversal based on the insufficiency of the evidence, however, is the constitutional equivalent of an acquittal "because it means that no rational factfinder could have voted to convict the defendant." *Tibbs v. Florida,* 457 U.S. 31, 41 (1982); *see Sumpter, supra,* 552 F.2d at 1211–12. *Sanabria* precludes carving an exception out of the *Burks* rule on the basis of an alleged "trial

error" that results in insufficient prosecution evidence.

Our decision today is nothing more than a reaffirmation of what has been the law at least since *Burks.* The state's reliance on cases that predate *Burks* is foreclosed by the Supreme Court's statement in that case that "A close reexamination of those precedents ... persuades us that they have not properly construed the Clause, and accordingly should no longer be followed." *Burks, supra,* 437 U.S. at 12. *Burks,* as clarified by *Sanabria,* is now the law. We of course are duty-bound to follow it.

 We note that there is an apparent, though not real, anomaly in the law in the following respect: if a trial court erroneously *admits* prosecution evidence, retrial is permitted because a reversal would be based on "trial error"; but where a trial court erroneously *excludes* prosecution evidence, and the conviction is reversed for insufficient evidence, retrial is barred. What appears at first blush to be an anomaly disappears upon closer examination. The rule that the state is afforded but one opportunity to convict, "lying at the core of the Clause's protections, prevents the State from honing its trial stategies and perfecting its evidence through successive attempts at conviction." *Tibbs, supra,* 457 U.S. at 41. The absence of competent substantive evidence to support a verdict of guilty beyond a reasonable doubt, whether the result of prosecutorial inability, judicial error or a recalcitrant witness, requires an acquittal either at trial or on appeal. The Constitution prohibits giving the state a "second bite at the apple." *Burks, supra,* 437 U.S. at 17.[7]

To summarize: We hold that appellant's first conviction was reversed by the Supreme Court of Indiana because the state failed to produce evidence sufficient to sustain a verdict of guilty beyond a reasonable doubt and that the insufficiency of the evidence, whether or not caused by an erroneous trial court ruling, was the constitution-

---

**7.** We are confident that this rule will not sanction the admission of prosecution evidence, where that decision might otherwise be a close one, for the purpose of permitting retrial in the event of reversal. The due process clause "sets a lower limit on an appellate court's definition of evidentiary sufficiency" and thereby restrains "the power of appellate courts to mask reversals based on legally insufficient evidence as reversals grounded on the weight of the evidence". *Tibbs, supra,* 457 U.S. at 45; *see Jackson v.*

*Virginia,* 443 U.S. 307, 316 (1979). Similarly, due process would prohibit retrial where it becomes clear to a reviewing court, whether federal or state, on the basis of statements made by the trial court, arguments presented by the prosecution, the objective clarity of the law on the issue or otherwise, that inadmissible evidence has been admitted for the sole purpose of allowing the state to garner additional competent evidence for a retrial.

al equivalent of an acquittal. Appellant's retrial and subsequent conviction, therefore, violated the double jeopardy clause of the Fifth Amendment.

We reverse the judgment of the district court and remand the case to that court with instructions to issue a writ of habeas corpus ordering Webster's immediate and unconditional release from custody.

Let the Great Writ issue.

REVERSED AND REMANDED.

## ORDER

The Court, sua sponte, hereby amends its opinion filed July 11, 1985, and reported in 767 F.2d 1206, by ordering:

(1) That the following portion of the opinion is deleted (referring to pages of the slip opinion dated July 11, 1985):

 (a) Beginning at page 18, line 17, through page 19, line 9.

 (b) Footnote 7 on pages 18 and 19.

(2) That, in lieu of the portion of the opinion deleted as set forth in paragraph (a) above, the following new paragraphs are added:

"The fact that *Burks* rests on two lines of reasoning may present difficulties in cases other than the one before us. As the Court emphasized in *Tibbs,* the decision in *Burks* depended not only on the fact that a properly instructed jury should have voted to acquit but also on the fact that the constitutional provision 'forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it fails to muster in the first proceeding.' *Burks, supra,* 437 U.S. at 11, quoted in *Tibbs, supra,* 457 U.S. at 41. If the prosecution actually presents enough evidence to support a conviction and the jury convicts, but for some reason the evidence properly admitted is insufficient, we would have a different case.

"For example, one court of appeals has suggested that if the evidence actually admitted is sufficient, but some of the evidence should have been excluded (perhaps on hearsay or exclusionary rule grounds) and what remains is insufficient, there may be a new trial so that the prosecution may replace the inadmissible evidence with admissible evidence. *United States v. Bibbero,* 749 F.2d 581,

586 & N. 3 (9th Cir.1984); *United States v. Harmon,* 632 F.2d 812 (9th Cir. 1980). The law need not encourage the prosecution to engage in overkill in the first trial to protect the judgment from later decisions that some evidence should have been excluded. As another example, a distinctly harder one, the government may offer sufficient evidence only to have the court erroneously exclude an essential portion. In such a case a retrial would not offend the second rationale of *Burks,* the one based on the prohibition against supplying evidence the prosecution 'failed to muster' in the first trial. Although it might accurately be portrayed as a case in which the first jury ought to have acquitted on the evidence it heard, unlike *Burks* it cannot be portrayed as a case in which the jury ought to have acquitted on all the evidence the prosecution mustered. *Sanabria* is not necessarily a complete rejection of a second trial in this limited circumstance, for as the Court reiterated in *Tibbs, supra,* 457 U.S. at 39–42, *Burks* is but a narrow exception to the rule that a reversal on appeal after a conviction may be followed by a new trial.

"We need not resolve these difficult cases here. The prosecution did not muster sufficient evidence only to learn belatedly that some evidence would be deemed inadmissible. No evidence was offered and excluded. The most the state can say is that the prosecutor thought, wrongly as things turned out, that he had offered sufficient evidence. The prosecutor did his best to wring substantive evidence from Allen and Allen's prior statement, but he failed. He knew throughout the trial that reliance on the prior statement for this purpose was chancy. Nothing the trial court said or did kept out any admissible evidence or lulled the prosecutor into a false sense of security.

"The prosecutor's erroneous prediction of the sufficiency of the evidence cannot distinguish this case from *Burks.* Doubtless the prosecutor in *Burks* thought he had offered enough, and surely he thought he could offer more if given another chance. Few prosecutors knowingly stop short of introducing evidence sufficient to convict. If a prosecutor's miscalculation of how much evidence is enough would permit a second

trial, *Burks* would be drained of substance. We therefore conclude that the double jeopardy clause barred a second trial in this case."

(3) That in all other respects the opinion filed July 11, 1985, is reconfirmed.