Raymond Lee HAMILTON *v.* STATE of Arkansas

CR 77-136                                    556 S.W. 2d 884

Opinion delivered October 31, 1977
(Division I)

368

*Don Langston,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellee.

ELSIJANE T. ROY, Justice. On the evening of August 16, 1976, a Fort Smith liquor store was robbed and an investigating police officer seriously wounded by being shot in the face when attempting to question a suspect. After trial by jury Appellant Raymond Lee Hamilton was found guilty of the offenses of aggravated robbery and attempted capital murder. Sentences on the respective charges were imposed at 40 years' imprisonment and a fine of $10,000 and life imprisonment and a fine of $15,000, the sentences to be served consecutively.

For reversal appellant first contends it was error for the trial court to deny his motion to suppress his confession since it was the product of an allegedly illegal detention and arrest without probable cause.

Appellant primarily relies on *Davis v. Mississippi,* 394 U.S. 721, 89 S. Ct. 1394, 22 L. Ed. 2d 676 (1969), and *Brown v. Illinois,* 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975), cases in which questioned evidence was suppressed. However, both of these cases concerned illegal arrests and detentions which were not based on probable cause. In *Davis,* prior to his arrest petitioner was held in jail overnight during which time he was fingerprinted and given a lie detector test,

all without being afforded assistance of counsel. The State made no claim that Davis voluntarily[1] accompanied the police to the station or willingly submitted to fingerprinting.

This Court in *Loomis* v. *State*, 261 Ark. 803, 551 S.W. 2d 546 (1977), considered an allegation similar to appellant's and found that evidence of Loomis's fingerprints did not need to be suppressed since they were taken during the investigatory stage of proceedings. The evidence that "Loomis voluntarily accompanied the police officers to the police department and voluntarily submitted to the taking of his fingerprints [was] uncontradicted." Since Loomis had become the primary focus of the investigation at that time, the *Davis* case was found to be distinguishable.

Many of the factors present in *Loomis, supra,* are also found in this case. In both good descriptions of the suspects were given to the police officers. Here, after the liquor store was robbed the clerk, Gerald Thron, described the assailant as being a black male, probably 21-22 years old, 6'1"to 6'3" tall, 165-175 pounds, wearing a light blue shirt and blue jeans, chrome reflector sunglasses and a blue short-billed cap.

During the investigation the police interviewed a number of subjects, 35 of whom were interviewed at the police station.[2] During the course of investigation the officers received information from a reliable informant whose prior information had led to convictions that appellant was a prime suspect. Based on this information a police officer contacted appellant's parents on August 17 and asked if they would have him come in for an interview, whereupon appellant voluntarily appeared at the station next day and was apprised of what the police wanted to discuss. A statement was taken and appellant indicated he would be willing to take a polygraph test. Appellant was told he could go and that the police would get in touch with him if they needed him further.

[1]All police interviews with appellant were prior to his arrest or forcible detention.

[2]In *Loomis, supra,* the police interviewed 177 possible suspects, and 55 of these were interviewed at the police station, but no illegal dragnet was found.

On August 22, the police once again contacted appellant through his parents and requested an interview. When appellant voluntarily came to the police station the next day he was informed that he could refuse to talk. A second statement was taken at that time.

The police continued to hear from the reliable informant that appellant was a likely suspect, and around noon on September 8 appellant was asked again if he would be willing to take a polygraph test. He answered in the affirmative and stated that he wanted to "hurry up and get this mess over with."[3] After appellant had been read his rights and signed a waiver, the test was administered. Because some of the answers indicated deceptive reactions appellant was asked to take the test two more times, which he agreed to do. Appellant was advised that he did not have to take the test if he did not wish to do so.

When the third test was completed Officer Bettis, the polygraph examiner, asked appellant if he wanted to tell him about it, whereupon appellant confessed. Hamilton was then asked if he would repeat the story, and, after agreeing to do so, he was again advised of his rights and he related his confession once more. It was taken down by a stenographer. Two other police officers were called back in while the statement was being typed. Appellant was again read his rights and signed another waiver.

In his confession appellant stated he had robbed the liquor store, shot Officer Willis a few moments later and fabricated an alibi involving his friend James Hughes.

Viewing these circumstances in their totality we find the record amply supports the conclusion that appellant was not illegally detained at the time he confessed to the crime. When the polygraph tests were given, culminating in appellant's confession, he had become the prime focus of the investigation and had been read the Miranda warnings several times. Therefore, we find no error in the admission of his confession at the trial.

[3]The machine however was not immediately available so appellant left to check on a job and voluntarily returned at 1:20 p.m. to take the test.

Appellant's second contention is that the trial court erred in either refusing to dismiss the robbery charge or declare a mistrial because the State relied upon perjured testimony to identify him as the culprit.

Gerald Thron, the store clerk, testified that during the investigation he viewed line-ups on two different occasions but that he was unable to positively identify anyone as the robber. Appellant attempted to impeach Thron by trying to show that he told two attorneys that he (Thron) had identified the robber in the second line-up but the police had released the suspect. The two attorneys were later called by appellant and testified Thron had so advised them. There was no evidence that appellant participated in any line-up or other identification procedure.

We have reviewed Thron's testimony and find that he stated he was not exactly sure what he had told the two men; that he may have stated that he thought he could identify one of the men in the line-up but that he was not positive. It is undisputed that after viewing the second line-up Thron marked a form indicating he did not recognize anyone as the robber.

We do not view Thron's testimony as being in direct conflict with that of the two attorneys, nor do we find that it amounts to perjury. At most, it indicates that prior inconsistent statements were made by this witness going to his credibility. Credibility of a witness is a matter with the province of the jury; they may accept or reject any or all of a witness's testimony. *Brown* v. *State,* 231 Ark. 363, 329 S.W. 2d 521 (1959).

Furthermore, contrary to appellant's contention, there is no indication that the prosecutor was aware of Thron's conversation with the two attorneys until it was elicited during cross-examination. *United States ex rel Washington* v. *Vincent,* 525 F. 2d 262 (2d Cir. 1975), relied upon by appellant, states that it is the "knowing use by a state prosecutor of perjured testimony" that ordinarily results in a deprivation of fundamental due process. The record certainly does not indicate any "knowing use" of perjured testimony.

Appellant next alleges error in the denial by the trial court of his motion for a directed verdict on the charge of attempted capital murder. It is contended that there was no substantial evidence of premeditation and deliberation in the shooting of Officer Willis. We find no merit in this point.

Ark. Crim. Code § 41-1501(1)(b) (1976) reads in pertinent part:

(1) A person commits capital murder if:

*  *  *

(b) with the premeditated and deliberated purpose of causing the death of any law enforcement officer, . . . when such person is acting in line of duty, he causes the death of any person; or

*  *  *

In relevant part Ark. Crim. Code § 41-701 (1976) reads:

(1) A person attempts to commit an offense if he:

(a) Purposely engages in conduct that would constitute an offense if the attendant circumstances were as he believes them to be; or

*  *  *

Premeditation and deliberation are elements of criminal activity which are rarely capable of proof by concrete, demonstrative evidence. In *Ulmer* v. *State,* 253 Ark. 106, 484 S.W. 2d 691 (1972), we stated that:

* * * Premeditation and deliberation may be inferred from the circumstances of the case, such as the character of the weapon used and the manner in which it was used, the nature of the wounds inflicted, the conduct of the accused and the like. (Citing cases.)

The ultimate disposition of this issue is for the jury after considering all the circumstances of the case.

Appellant in his confession stated he was running up Seventh Street to "P" Street when Officer Willis pulled up in his police car and said "Come here son or something like that." Appellant further stated: "As I walked back to the car I had my gun in my hand with my hat covering it. The gun was cocked. As I snatched the hat off of the gun it went off." Carolyn Jackson witnessed the incident and testified that she saw a person walk up to approximately three feet from the officer, heard a shot and saw the individual run away and Willis's automobile crash. Willis had been shot in the face.

The evidence was sufficient to support the jury's finding that appellant acted with the requisite state of mind in shooting Officer Willis to sustain a conviction of attempted capital murder.

We do find merit in appellant's fourth contention concerning his request for an instruction on the lesser included offense of robbery. Appellant was charged with aggravated robbery as defined in Ark. Crim. Code § 41-2102 (1976) because it was alleged that he employed a firearm in the perpetration of the robbery. The trial court refused to give appellant's Requested Instruction Number A which defined the lesser included offense of robbery as defined in Ark. Crim. Code § 41-2103 (1976).

The testimony was in conflict as to whether appellant was armed. Gerald Thron testified appellant employed a firearm, but Ben Barker, a defense witness, testified that he came into the store as the robber was leaving and that he did not see a firearm but only the assailant carrying a paper bag.

In *Caton & Headley v. State,* 252 Ark. 420, 479 S.W. 2d 537 (1972), this Court recognized its duty to zealously protect the right of an accused to have the jury instructed on a lesser included offense.[4] We stated:

---

[4]Ark. Crim. Code § 41-105(3) (1976) provides:

The court shall not be obligated to charge the jury with respect to an

* * * We have consistently held that a trial court commits reversible error when it refuses to give a correct instruction defining a lesser included offense and its punishment when there is testimony on which the defendant might be found guilty of the lesser rather than the greater offense. (Citing cases.) * * *

It was the prerogative of the jury to evaluate the conflicting evidence and resolve the issue here. See *Milburn v. State*, 260 Ark. 553, 542 S.W. 2d 490 (1976).

Appellant's final allegation is that it was error for the trial court to give Instruction No. 6 on attempted capital murder and refuse to give appellant's modified instructions on that issue.

Instruction No. 6 reads as follows:

The defendant is charged with committing the crime of Attempted Capital Murder.

As defined by the Arkansas Statutes a man is guilty of Capital Murder if he with the premeditated and deliberate purpose of causing the death of any law enforcement officer, when such a person is acting in the line of duty, he causes the death of any person. Premeditation as used in these instructions means thought of beforehand. Deliberation means weighing in the mind the consequences of the course of conduct, as distinguished from acting upon a sudden impulse without the exercise of the reasoning powers. The premeditation and deliberation to do murder may be formulated in the assailant's mind upon the instant. It does not have to exist in the mind any appreciable length of time. All that is necessary is for it to exist when the assailant commits the act. The premeditation and deliberation defined in these instructions may be in-

---

included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.

Here the testimony warranted the giving of the instruction on the lesser included offense.

ferred from the circumstances of the case. A person attempts to commit an offense if he purposely engages in conduct that would constitute an offense if the attendant circumstances were as he believes them to be. "Conduct" means an act or omission and its accompanying mental state. A person acts "purposely" with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.

We find no merit in this contention. The definitions included in the instruction regarding "conduct" and acting "purposely" were taken from Ark. Crim. Code § 41-201 and 41-203 (1976), respectively. Furthermore the wording of the instruction encompassed the language of the criminal activity involved as contemplated in Ark. Crim. Code § 41-1501(1)(b) and 41-701(1)(a), *supra*. Premeditation and deliberation may permissibly be inferred from the circumstances of the particular case. *Ulmer* v. *State, supra*.

The Court's instruction correctly and adequately covered the issue. Appellant's proffered instructions were not correct statements of the law and were properly refused by the court.

For error made in not submitting the lesser included offense to the jury we accordingly reduce the sentence imposed on the charge of aggravated robbery from 40 years to 16 years, and the fine remains the same.

Affirmed as modified.

We agree. GEORGE ROSE SMITH and HOLT and HICKMAN, JJ.