Larry CRUTCHFIELD *v.* STATE of Arkansas

CR 91-35                                     812 S.W.2d 459

Supreme Court of Arkansas
Opinion delivered June 24, 1991
[Supplemental Opinion on Denial of Rehearing October 14, 1991.*]

---

* Dudley, J., would grant rehearing.

*William R. Simpson, Jr.*, Public Defender, by: *Brett Qualls*, Dept'y Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Pamela Rumpz*, Asst. A'tty Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was charged with, and convicted of, aggravated robbery and possession of drug paraphernalia. We affirm the conviction for aggravated robbery, but reverse and dismiss the conviction for possession of drug paraphernalia.

## 1. Aggravated robbery

At about 2:30 a.m. on the night of May 26, 1990, Steven Barnes' car ran out of gas near the intersection of 23rd and Izard Streets in Little Rock. He knew there was a gas station at a

nearby intersection, so he walked there, only to discover that it was closed. Outside the station he saw some men standing beside a blue sports car. He walked over to them and asked if they would take him to get some gas. One of the men was the appellant. As Barnes was talking to the appellant, another of the men, known as Bullwinkle, slipped up behind Barnes and began beating him on the head with a large pistol. Barnes tried to run away, but appellant and Bullwinkle chased him about half a block and caught him. Bullwinkle again started pistolwhipping him and ordered the appellant to grab his wallet. The appellant grabbed Barnes' wallet, and he and Bullwinkle ran to the corner of 26th and Arch where the blue sports car was waiting. They got in the car and drove away.

Appellant was convicted of a violation of Ark. Code Ann. §5-12-103(a)(1) (1987), which provides:

> A person commits aggravated robbery if he commits robbery as defined in § 5-12-102, and he: (1) Is armed with a deadly weapon or represents by word or conduct that he is so armed; . . . .

Ark. Code Ann. § 5-12-102 (1987) provides, in part:

> A person commits robbery if, with the purpose of committing . . . *a theft* . . ., he employs or threatens to immediately employ *physical force* upon another.

(Emphasis added.)

Appellant first argues that the proof was not sufficient to show his intent to commit a theft because he only acted on Bullwinkle's command. The argument is without merit. The evidence does not show that appellant protested when Bullwinkle began to beat Barnes, instead he joined in the affray by chasing Barnes when he tried to run away. He took Barnes' wallet and fled the scene of his own volition. Taking the wallet and running away with it are strong evidence that he intended to deprive Barnes of his property. Depriving another of his property is the essence of theft. See Ark. Code Ann. § 5-36-103 (1987).

Appellant next contends that there was no evidence that he used physical force on another person. Barnes testified that "they caught me. They kept beating me in the head with a

pistol." Appellant argues that "they" is not substantial evidence that he was involved in the beating because there were at least three people present when the victim first approached the group of men to ask for a ride. We reject the argument because Barnes testified that "the both of them started chasing me," and that after they caught him, "the other guy with the pistol ordered that guy right there [appellant] to take my wallet out of my pocket." It is clear that "both" referred to appellant and Bullwinkle. The jury did not have to resort to conjecture to establish that appellant participated in using physical force against the victim, Barnes.

■■ Appellant also contends that there was no evidence introduced to show that he was armed with a weapon. We reject this contention since the evidence established that appellant's companion was armed with a pistol and beat Barnes in the head with it. Although appellant never actually possessed the gun, he was liable as an accomplice because he assisted and actively participated in the crime.

Ark. Code Ann. § 5-2-403(a)(2) (1987) provides:

A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

. . .

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it.

When two persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both. A participant cannot disclaim responsibility because he did not personally take part in every act that went to make up the crime as a whole. *Parker* v. *State*, 265 Ark. 315, 325, 578 S.W.2d 206, 212 (1979).

■ Here, appellant and Bullwinkle chased and caught Barnes. Bullwinkle was beating Barnes when the appellant took Barnes' wallet, and then appellant fled with Bullwinkle. The jury could reasonably infer that appellant and Bullwinkle were acting together. Further, fleeing from the scene of the crime is relevant to the issue of guilt. *Jones* v. *State*, 282 Ark. 56, 665 S.W.2d 876 (1984). Therefore, there is substantial evidence to support

appellant's conviction for aggravated robbery, and that conviction is affirmed.

### 2. Possession of drug paraphernalia

At the time of appellant's arrest, the officer performed a pat-down search and, in appellant's right front trouser pocket, found a small piece of chrome plated metal tubing that appeared to be a three or four inch piece of automobile radio antenna. Inside the tube was a "piece of screen or mesh, wire-type mesh, or metal material of some kind." The outside appeared to have been burned or heated.

Immediately before trial, appellant's attorney made a motion asking that the State's witnesses not be allowed to refer to the piece of antenna as a "crack pipe." The trial judge granted the motion. In addition, the appellant moved that the State be precluded from showing that pieces of antenna are commonly used as drug paraphernalia. The trial court also granted that motion. Immediately afterward, the following colloquy occurred:

> MS. BALL: [Deputy Prosecutor] Okay, I'll just tell you what I was planning on asking. If you don't want me to, I won't ask it. He is a patrolman. He knows about what devices are used, just through his everyday work, to smoke for ingesting cocaine. I was going to ask him if he had an opinion as to what this was used for and what was the basis for his opinion, and then he would talk about all the arrests he has made with devices such as this and what it is used for and if he has gone to seminars, etcetera.

> THE COURT: I don't think we need that for this case.

Appellant argues that the evidence is insufficient to support a conviction for possession of drug paraphernalia. The argument is well taken. Appellant was charged with violating Ark. Code Ann. § 5-64-403(c)(1) (1987) which provides:

> It is unlawful for any person *to use*, or *to possess with intent to use, drug paraphernalia*, to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise *introduce into the human body a controlled substance in*

*violation of subchapters 1-6 of this chapter.* Any person who violates this section is guilty of a Class C felony.

(Emphasis added.)

In short, the statute provides that it is a crime to use, or to possess with intent to use, drug paraphernalia to inhale or ingest drugs. The State argues that the chrome tube is drug paraphernalia by statutory definition. Ark. Code Ann. § 5-64-101(v) (Supp. 1989) defines drug paraphernalia and contains a partial list of included items, as well as fourteen (14) factors to be considered in determining whether an object is drug paraphernalia. Subsection 12(A) provides:

> Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body, such as:
>
> (A)    Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls; . . .

Ark. Code Ann. § 5-64-101(v)(12)(A) (Supp. 1989).

It would amount to sheer speculation to hold that this piece of antenna was possessed for drug use without some testimony that such a tube is often used for inhaling drugs. However, we need not dwell on the issue because, even if it fits the statutory description of drug paraphernalia, the State must prove that appellant used or possessed it with intent to introduce a controlled substance into the human body. The State's proof falls short on that element. No proof was offered to show that there was a residue of a controlled substance inside or outside the tube; in fact, the tube was not tested for drug residue. No drugs were found on appellant or in his residence, and he was not linked in any way to drug use. Without something more to connect the piece of car antenna to controlled substances, the jury had to speculate to conclude that the appellant intended to use it for the prohibited purpose.

In determining whether there is sufficient evidence to support a jury verdict, this court views the evidence in the light most favorable to the appellee and affirms the verdict if there is

substantial evidence to support it. Substantial evidence is that which is of sufficient force to compel a conclusion one way or another. It must be more than mere speculation or conjecture. *Cerda* v. *State*, 303 Ark. 241, 795 S.W.2d 358 (1990). Because the jury had to speculate that appellant possessed the piece of chrome tube with an intent to use it to inhale controlled substances, the evidence is not sufficient to support the conviction for possession of drug paraphernalia and that conviction must be reversed.

■ The State asks that we not consider the appellant's insufficiency argument because, it contends, the appellant did not specifically argue, in his motion for a directed verdict, that the tube was not covered under the statute. We reject the contention because (1) the appellant's attorney referred by number to the specific statute involved and (2) discussed at length the intent issue.

Next, the State tacitly admits that it did not prove that the tube was used or intended to be used as drug paraphernalia, but argues that the trial court's erroneous ruling caused the failure of proof and that "the sufficiency of the State's proof of appellant's guilt should be evaluated on the basis of the evidence the State proffered to the trial court, not on the basis of the evidence the trial court actually admitted" and that "the State should not be denied a conviction because admissible evidence was excluded."

Initially, we note the trial court did err in its ruling against the State. Ark. Code Ann. § 5-64-101 (Supp. 1989) provides:

> In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:
>
> . . .
>
> (14) Expert testimony concerning its use . . . .

Further, A.R.E. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact of issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

However, such an evidentiary error by the trial court does not mean that a jury conviction can be affirmed on appeal by the appellate court's consideration of matters which the jury did not hear. Our Court of Appeals has expressly held that such evidence may not be considered. *Ryan* v. *State*, 30 Ark. App. 196, 786 S.W.2d 835 (1990). We agree with the reasoning of that case.

The State cites the case of *Webster* v. *Duckworth*, 767 F.2d 1206 (7th Cir. 1985) as authority for the proposition that, upon trial court evidentiary error, evidence proffered by the State may be considered by an appellate court to affirm a conviction. We do not so read the case.

The conviction for aggravated robbery is affirmed; the conviction for possession of drug paraphernalia is reversed and dismissed.

## SUPPLEMENTAL OPINION ON REHEARING
### OCTOBER 14, 1991

816 S.W.2d 884

*Winston Bryant*, Att'y Gen., by: *Pamela Rumpz*, Asst. Att'y Gen., for petitioner.

*William R. Simpson, Jr.*, Public Defender, *Omar F. Greene II*, Deputy Public Defender, by: *Bret Qualls*, Deputy Public Defender, for respondent.

Tom Glaze, Justice. In its petition for rehearing, the state disagrees with that part of our original opinion that reverses and dismisses this case. Instead, it suggests we should reverse and remand for retrial on the charge of possession of drug paraphernalia. We agree.

In our earlier opinion, we agreed with the state that the trial court erred in excluding the state's proffered expert testimony indicating the chrome metal tubing with wire-type mesh possessed by appellant was drug paraphernalia. We further said that such evidentiary error by the trial court did not mean that a jury conviction can be affirmed on appeal by our consideration of matters which the jury did not hear. Of course, we were correct in this observation. However, we further cited and relied on language in *Webster v. Duckworth*, 767 F.2d 1206 (7th Cir. 1985), wherein that court stated that where a trial court erroneously excludes prosecution evidence, retrial is barred. The *Webster* court then mistakenly summarized the rule to be that a defendant could not be retried after his conviction was reversed due to the state's failure to produce evidence sufficient to sustain a verdict of guilty beyond a reasonable doubt *and that the insufficiency of the evidence, whether or not caused by an erroneous trial court ruling, was the constitutional equivalent of an acquittal.*

The *Webster* court later amended its opinion deleting the language summarized above. In doing so, the court acknowledged that, under *Burks v. United States*, 437 U.S. 1 (1978), a defendant may be retried when the government offered sufficient evidence only to have the court erroneously exclude an essential portion. *Webster*, 767 F.2d at 1215. Stated in other terms, the *Burks* rule is that the double jeopardy clause prohibits retrial when a conviction is reversed for insufficient evidence as opposed to trial error. *Burks*, 437 U.S. at 14.

In the present case, insufficiency of the evidence does not exist. Instead, the state offered expert evidence, erroneously excluded by the trial court, which bore on the issue of whether the chrome tube found on Crutchfield was drug paraphernalia and therefore intended for use to inhale controlled substances. Even though the trial court excluded such evidence, it still permitted the possession of drug paraphernalia charge to go to the jury which returned a conviction on the charge. In other words, the

trial court never entered an acquittal because of its erroneous ruling nor did the jury acquit Crutchfield because the evidence was excluded. Thus, this case is unlike the case of *Sanabria* v. *United States*, 437 U.S. 54 (1977), upon which the dissenting opinion relies. *See also United States* v. *Jenkins*, 420 U.S. 358 (1975).

In sum, with the above expert testimony, the trial evidence was sufficient to support Crutchfield's conviction for possession of drug paraphernalia. *See Lockhart* v. *Nelson*, 488 U.S. 33, 41 (1988); *Palmer* v. *Grammer*, 863 F.2d 588 (8th Cir. 1988); *cf. Rogers* v. *State*, 293 Ark. 414, 738 S.W.2d 412 (1987); *see also* Westen & Drubel, *Toward a General Theory of Double Jeopardy*, 1978 Sup. Ct. Rev. 81,147 (1979). Under the *Burks* rationale, the state is entitled to present its proof. Thus, we reverse and remand this case for retrial on the charge of possession of drug paraphernalia. In all other respects, our earlier opinion is reconfirmed.

DUDLEY, J., dissents.

ROBERT H. DUDLEY, Justice. In our original opinion we held that the trial court had erroneously excluded a part of the State's evidence. As a result, the State was not able to prove one of the elements of the crime but, even so, the jury returned a verdict of guilty. On appeal, we reversed because of the insufficient evidence concerning the missing element.

We dismissed the charge since the reversal was based upon insufficiency of the evidence. On rehearing, the State asks that we remand rather than dismiss. The majority today grants rehearing to change the disposition of the case to remand. I dissent.

On June 14, 1978, the Supreme Court of the United States decided three (3) cases which made clear its interpretation of the Double Jeopardy Clause of the Fifth Amendment. That trilogy of cases provide that when a criminal case is reversed solely because of trial error, retrial is not prohibited, but when a case is reversed because of insufficiency of evidence, retrial is prohibited.

The first of the three (3) cases is *Burks* v. *United States*, 437 U.S. 1 (1978). The unanimous opinion of the Court reasoned that an appellate court's determination of insufficient evidence is tantamount to holding that the trial court should have directed a

verdict of acquittal. Had the trial court done so, there could be no retrial. The mere fact that the appellate court is the one to declare the insufficiency of the evidence is irrelevant. A determination of some court has been made that the evidence was insufficient. After that determination, no retrial is permissible. *Id.* at 16. The key fact is the *acquittal*, and it matters not whether it is granted at the trial level or the appellate level.

The second case, *Greene* v. *Massey*, 437 U.S. 19 (1978), applied the *Burks* decision, a federal decision, to state proceedings. The question in this case was whether a state could retry a defendant whose case was reversed by a state appellate court because of the insufficiency of the evidence. The Supreme Court held that since the original reversal had been based on the "view that the evidence was definitely lacking in establishing beyond a reasonable doubt that the defendants committed murder in the first degree," double jeopardy barred retrial. *Greene* v. *Massey*, 437 U.S. at 25.

The third case decided that same day was *Sanabria* v. *United States*, 437 U.S. 54 (1978). In it, the Court held that even when an erroneous exclusion of evidence causes the insufficiency of evidence, retrial was barred. The court wrote: *"[T]here is no exception permitting retrial once the defendant has been acquitted, no matter how 'egregiously erroneous' the legal rulings leading to that judgment might be." Id.* at 75 (Citation omitted. Emphasis added.)

In 1981, the *Burks* decision was affirmed in *Hudson* v. *Louisiana*, 450 U.S. 40 (1981). In 1982, the Court reiterated that the *Burks* doctrine applied to reversals based on insufficiency of the evidence, but explained that it did not apply to a reversal based upon the weight of the evidence. *Tibbs* v. *Florida*, 457 U.S. 31 (1982). (The *Tibbs* case arose in Florida which has a rule directing the State Supreme Court to "review the evidence to determine if the interests of justice require a new trial, whether the insufficiency of the evidence is a ground of appeal or not." *Id.* at 46. *Tibbs'* reversal "rested upon a finding that the conviction was against the weight of the evidence, not upon a holding that the evidence was legally insufficient to support the verdict." *Id.* at 47.)

Professors Singer and Hartman have accurately summa-

rized the law on this point as follows:

> *Effect of Reversal on Appeal.* When the defendant's case is reversed on appeal, retrial is barred by the rule against double jeopardy if the reversal is based upon insufficiency of the evidence. If it is based upon procedural error at the trial, retrial is not prohibited. This principle is applicable in both state and federal proceedings. However, if the reversal is based upon the weight of the evidence as opposed to the insufficiency of the evidence, retrial is not barred.

S. Singer & M.J. Hartman, *Constitutional Criminal Procedure Handbook*, § 16.23, at 590 (1986). In short, retrial is barred in the case at bar, since the reversal was for insufficient evidence.

In contrast to the bright line drawn by the Supreme Court of the United States, the majority opinion cited dictum from 7th Circuit's case of *Webster* v. *Duckworth*, 767 F.2d 1206 (1985). Even that dictum would not mandate reversal and, more importantly, the holding of the case does not support the majority opinion. Accordingly, I would not grant rehearing and dissent to the majority's so doing.