Mary Elizabeth CIGAINERO *v.* STATE of Arkansas

CR 92-85 838 S.W.2d 361

Supreme Court of Arkansas
Opinion delivered October 5, 1992
[Rehearing denied November 2, 1992.*]

---

*Corbin, J., would grant rehearing.

*Damon Young*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

Jack Holt, Jr., Chief Justice. Appellant, Mary Elizabeth Cigainero, was convicted of first degree murder in the shooting death of her husband, Christopher Cigainero. She argues that her

conviction should be reversed claiming there was insufficient evidence to support the conviction and the trial court erred in not granting her a new trial based on juror bias. We disagree and affirm her conviction.

Early the morning of June 4, 1989, Christopher Cigainero returned home after an evening with his cousins. As he attempted to enter the house through his living room window, he was shot through the chest with a high powered rifle. Mr. Cigainero's wife, Mary Elizabeth Cigainero, admits having shot him. She claims that she thought he was an intruder and fired upon him out of fear. The jury found that she had killed him with premeditation and deliberation and sentenced her to life imprisonment.

 Cigainero first argues that the evidence presented at trial was insufficient to prove her guilty of first degree murder and that the trial court erred in overruling her motion for directed verdict. In consideration of Cigainero's motion for directed verdict, we will affirm the trial court's decision if there is substantial evidence to support the verdict. *Williams* v. *State*, 289 Ark. 443, 771 S.W.2d 825 (1986). Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another, forcing or inducing the mind to pass beyond a suspicion or conjecture. *Holloway* v. *State*, 293 Ark. 438, 738 S.W.2d 796 (1987).

 Circumstantial evidence indicating that Cigainero had planned and committed the murder of her husband is more than substantial. The law makes no distinction between circumstantial and direct evidence. *Perry* v. *State*, 277 Ark. 357, 642 S.W.2d 865 (1982). For circumstantial evidence to be sufficient, it must exclude every reasonable hypothesis consistent with innocence. It is up to the jury, however, to determine whether the evidence excludes every other reasonable hypothesis. *Traylor* v. *State*, 304 Ark. 174, 801 S.W.2d 267 (1990); *Upton* v. *State*, 257 Ark. 424, 516 S.W.2d 904 (1974). The matter of premeditation and deliberation and intent may all be inferred from the circumstances. *Hamilton* v. *State*, 262 Ark. 366, 556 S.W.2d 884 (1977); *Wilson* v. *State*, 258 Ark. 110, 522 S.W.2d 413, *cert. denied*, 423 U.S. 1017 (1975) An instant of premeditation is enough to sustain a conviction. *Shipman* v. *State*, 252 Ark. 285, 478 S.W.2d 421 (1972).

Testimony indicated that Cigainero was unhappy with her marriage but was afraid to divorce her husband because she might lose custody of her children. She had been involved in affairs while married. Numerous witnesses testified that Cigainero had discussed ways to have her husband killed. Although Cigainero claimed that she shot the victim believing he was an intruder, witnesses claimed that the victim often climbed through the window after coming home late in the evening. Cigainero's co-worker testified that the day prior to the homicide, he had taken her to pick up the rifle used in the murder. Evidence also indicated that although Cigainero's home was usually "very nasty," on the morning of the homicide, the home was very neat, except for a bathtub filled with dirty dishes. A witness testified that Cigainero had told her that she was going to clean up her house and have her lawn mowed prior to killing her husband as he came through the window. Lastly, Cigainero confided her acts to her friends and lovers indicating on at least one occasion that she intentionally shot her husband.

Cigainero also argues that the trial court erred in refusing to grant her a new trial based on juror bias. The state argues that this issue was not preserved for appeal because the motion for new trial was filed almost ninety days after the conviction was entered. We agree with the state.

Both A.R.Cr.P. Rule 36.22 and Ark. Code Ann. § 16-91-105 (1987) dictate that a motion for new trial must be filed within thirty days of the judgment. The trial court found that the motion for new trial was timely, claiming that the motion involved newly discovered evidence and A.R.C.P. Rule 60(c)(1) allows a motion for new trial to be filed after ninety days where the grounds for the motion are newly discovered evidence. The trial court was wrong as A.R.Cr.P. Rule 36.22, not A.R.C.P. Rule 60, is applicable here.

> A person convicted of either a felony or misdemeanor may file a *motion for new trial*, a motion in arrest of judgment, or any other application for relief, but *all motions or applications must be filed prior to the time fixed to file a notice of appeal*. Such pleadings should include a statement that the movant believes the action to be meritorious and is not offered for the purpose of delay. . .Upon the

filing of any motion or other application for relief in the trial court, the time to file a notice of appeal shall not expire until thirty (30) days after the disposition of all motions or applications.

A.R.Cr.P. Rule 36.22 (emphasis added).

■■ Cigainero also relies on Ark. Code Ann. § 16-89-130 (1987) as a grant of extra time to file. It provides in part: "The application for a new trial must be made at the same term at which the verdict is rendered, unless the judgment is postponed to another term, in which case it may be made at any time before judgment," and notes that this applies in cases including where, because of jury misconduct, the court is of the opinion that the defendant did not receive a fair trial. To the contrary, A.R.Cr.P. Rule 36.22 and Ark. Code Ann. § 16-91-105 (1987) have set the time frame, thirty days from date of judgment, and they have effectively superseded and taken precedence over Ark. Code Ann. § 16-89-130. *Chism* v. *State*, 274 Ark. 332, 625 S.W.2d 448 (1981). Cigainero's motion is not timely, and her issue of whether the trial court erred in refusing to grant a new trial will not be considered on appeal.

In accordance with Rule 11(f) of the Rules of the Supreme Court, all other objections made during the trial have been examined. We find no error.

Affirmed.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. The appellant was convicted of first degree murder on December 17, 1990. Notice of appeal was filed on December 19, 1990. On March 15, 1991, appellant filed a motion for new trial on the basis that two of the jurors who sat on this jury, together with their spouses were among the 2500 persons who had signed a petition *before* trial asking that the circuit judge of Miller County call a grand jury to investigate the office of the prosecuting attorney for his failure to "file, charge, and prosecute the Christopher Cigainero homicide." The petition also requested that a special prosecutor be appointed to investigate this "serious breakdown in justice in Miller County, Arkansas." It also stated that "a failure to prosecute these criminals is against Arkansas law."

At the hearing on the motion for new trial, it was brought out that each of the two jurors had at least eight opportunities during voir dire to tell the court and counsel of their involvement with the petition, but never did. They remembered that during voir dire the court informed the jury panel that the case involved the murder of Christopher Cigainero; that the prosecutor asked if anyone on the panel knew about the case; and that inquiry was made as to any discussion that the jurors may have had about the case with anyone in such places as a restaurant or church. Both jurors remembered defense counsel's question of whether anyone thought he or she might not be a qualified juror because of anything he or she had heard or read. However, each denied that, during voir dire, they remembered signing the petition.

In arguing her motion, appellant relied on both Ark. Code Ann. § 16-89-130(c)(3) (1987), which provides for a new trial where the verdict was reached by "lot, or in any other manner than by a fair expression of opinion by the jurors" and section 16-89-130(c) (7) which provides for a new trial "[w]here, from the misconduct of the jury, or from any other cause, the court is of the opinion that the defendant has not received a fair and impartial trial." Appellant argued this motion was timely filed within the November 1990 term of the court as provided by section 16-89-130(b). The majority opinion concludes that her motion was untimely and therefore declines consideration of what actually occurred.

The writ of error coram nobis might be the better way of dealing with such a problem as presented in this case. We have limited its availability to cases where there is an error of fact extrinsic to the record such as insanity at the time of trial, a coerced plea of guilty, or material evidence withheld by the prosecutor that might have resulted in a different verdict. *Taylor v. State*, 303 Ark. 586, 799 S.W.2d 519 (1990). This limitation is justifiable for the reason that we would have little or no finality in criminal prosecutions in the absence of a strictly limited application of the writ. This case presents facts that would perhaps warrant an extension of our limited application of the writ of error coram nobis.

A trial by a fair and impartial jury made up of one's peers is the very cornerstone of our American system of jurisprudence. It

is a right granted to us by our United States and State Constitutions and protected by case law spanning the 156 years of this court's existence. Today, this court departs from this fundamental and guaranteed right because of noncompliance with a court rule of procedure. True enough, the attorney for the defendant failed to timely move for a new trial, the evidence of guilt is overwhelming, and the attorney should probably have checked the names of the jury panel against the 2500 plus names on the petition (a tedious task); however, he should also be allowed some leniency in failing to check the signatures given the failure of the jurors to inform counsel of their familiarity with the case and involvement with the petition. There should be a remedy when the jury starts up 10 to 2. These two jurors should not have been on this panel.