Minnie Marie MISSILDINE *v.* STATE of Arkansas

CR 93-569                                          863 S.W.2d 813

Supreme Court of Arkansas
Opinion delivered October 25, 1993

*Jim Pedigo*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. On December 3, 1991, the appellant, Minnie Marie Missildine, shot her daughter, Sheila Robertson, in the head causing her death. Following trial by jury, Missildine was found guilty of first degree murder and sentenced to life imprisonment.

As background, Missildine had had psychiatric problems for a number of years, had been hospitalized several times, and at one point, underwent a left frontal lobectomy due to seizures. On the day of the crime, Missildine apparently told Sheila she intended to kill herself.

At approximately 2:00 p.m. on December 3, officers were called to a disturbance at the home of Ruth Franklin, mother of Missildine; Sheila was present. Sheila and Franklin expressed concern to the officers because Missildine had locked herself in her home with pills and guns. The officers informed them of the need to start commitment proceedings and left.

Later that same day at approximately 4:00 p.m., officers were called to a suicide attempt at Missildine's residence. Tom Douglas, a deputy sheriff for Miller County, testified that Gary Woods[1], Danny Robertson[2], and Sheila Robertson were attempting to get Missildine out of the house, and away from the pills and

---

[1] Friend of Missildine.

[2] Husband of Sheila.

guns for her own protection. Sheila was near the house and did not respond when officers and her husband urged her to retreat. As Sheila was circling the house, beating on the outside wall, and yelling to her mother, she disappeared from view. Shortly, a single gunshot was heard.

Missildine bases her appeal on the following two points: insufficiency of the evidence through motions for a directed verdict and ineffective assistance of counsel. Missildine argues that the state failed to present any evidence that she acted with the purpose of causing the death of her daughter and that her trial counsel failed to adequately represent her by calling the proper witnesses.

When the sufficiency of the evidence is being challenged on appeal, this court reviews the evidence in the light most favorable to the appellee, considering only that evidence which tends to support the verdict. This court does not weigh evidence on one side against the other, but simply determines whether the evidence in support of the verdict is substantial. *McClure* v. *State*, 314 Ark. 35, 858 S.W.2d 103 (1993); *Salley* v. *State*, 303 Ark. 278, 796 S.W.2d 335 (1990). Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or another, and requires more than mere speculation or conjecture. *Crutchfield* v. *State*, 306 Ark. 97, 812 S.W.2d 459 (1991). It is permissible to consider only the testimony which supports the verdict of guilt. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988); *McClure* v. *State*, 314 Ark. 35, 858 S.W.2d 103 (1993).

A person commits murder in the first degree if with a purpose of causing the death of another person, he causes the death of another person. Ark. Code Ann. § 5-10-102(a)(2) (Supp. 1991). A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result. § 5-2-202(1) (1987).

Here, even though there were no eyewitnesses to the actual shooting, a number of sheriff's deputies were at the scene at the time the shooting occurred. Circumstantial evidence may constitute substantial evidence when it excludes every other reasonable hypothesis consistent with innocence. Guilt may be proved even in the absence of eyewitness testimony, and evidence

of guilt is no less because it is circumstantial. *Smith* v. *State*, 282 Ark. 535, 669 S.W.2d 201 (1984); *Sheridan* v. *State*, 313 Ark. 23, 852 S.W.2d 772 (1993). It is for the jury to determine whether the evidence excludes every other reasonable hypothesis. *Cigainero* v. *State*, 310 Ark. 504, 838 S.W.2d 361 (1992).

Sheila was last seen going around the house, calling to her mother. A single gunshot was heard. Shortly, Missildine exited the house near where Sheila was last seen and called for someone to "come get her out of my yard." Both deputies Tommy Douglas and Charles Wise testified that Missildine sounded "angry" when she yelled at them to come and get her daughter, and that the tone of her voice was rough and raspy. Missildine was pointing the gun toward the officers and had to be told several times to drop it before she actually complied. As the deputies approached her, Missildine turned and attempted to escape. When the deputies rounded the house toward Missildine, they saw Sheila lying on her back with a bullet wound in her forehead, several feet from a window. Missildine's defense was based on an accidental shooting or a shooting due to drug impairment.

John Mackey, a criminal investigator for Miller County, testified that he determined the fatal bullet came from inside the house through the window and screen near the body. The window and screen had a hole in them, and broken glass was found inside on a table and on the floor near the window. Mackey testified that these findings were consistent with a bullet being shot through the window and screen. Further, the shot through the window occurred within a narrow space between a fan and a clothes basket sitting on a washing machine, the inference being that the gun was aimed through the narrowed space. A .22 revolver was found in the yard where Missildine tossed her weapon. In the revolver, Mackey found five unspent cartridges and one spent shell in the chambers. He also collected several prescription drug containers, ammunition, and a .38 revolver from the house.

Berwin Monroe, an expert in the firearms section of the Arkansas Crime Laboratory, testified the bullet removed from Sheila's head was too mutilated to determine barrel markings. He testified that the degree of mutilation present was consistent with the bullet being fired through an intervening material such as glass, penetrating the front of the skull, and then bouncing off the

back of the skull as occurred in this case. Monroe was able to determine that the bullet was of the .22 caliber class. Further, he testified that the .22 revolver he received from the crime scene was a single action. In order to fire the .22 revolver with such an action, a person must first pull back or cock the hammer before pulling the trigger.

After being apprehended, Missildine was taken to the hospital and screened for a drug overdose. Drug testing revealed the presence of an unknown amount of benzodiazepines (once called tranquilizers), a low therapeutic dose of Dilantin (for control of seizures), and a low therapeutic dose of an antidepressant, Pamelor. Dr. Charles Poteet, the emergency room physician who examined Missildine, testified that there was no objective evidence indicating Missildine had overdosed, but that her sleepiness at that time, coupled with her medical history, was suggestive of overdose. He was able to state positively that a lethal dose of the benzodiazepine could be ruled out.

Missildine argues that Poteet testified that a person on Valium, a benzodiazepine, will react with anger if you try to stop them. While the benzodiazepine found in Missildine was of an unknown type and amount, no Valium pills or container were found in Missildine's house. Further, Missildine argues that because there were no eyewitnesses, there was no proof that she acted with the intent necessary to purposely shoot her own daughter. And because three drugs were found in her system, she was not acting under her own will.

Intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances surrounding the killing. *Starling* v. *State*, 301 Ark. 603, 786 S.W.2d 114 (1990). Even premeditation, deliberation, and purposeful intent can be formed on the spur of the moment. Further, the intent necessary for first degree murder may be inferred from the type of weapon used, the manner of its use, and the nature, extent, and location of the wounds. *Williams* v. *State*, 304 Ark. 509, 804 S.W.2d 346 (1991).

Here, the circumstantial evidence is sufficient to show that Missildine acted with the purposeful intent to kill her daughter. First, the single action gun required an overt act of positioning the hammer before it would fire. The fatal bullet

passed through a narrow space raising the inference that the gun had to be purposely aimed in order for the bullet to pass undeflected by obstacles. The bullet entered the deceased's left forehead. Finally, after the shooting, Missildine reacted with anger in calling for the police to remove her daughter, and was reluctant to drop the gun when ordered to do so. From this evidence the trial court determined that there was a question of fact which was properly placed before the jury.

In *Novak* v. *State*, 287 Ark. 271, 698 S.W.2d 499 (1985), this court upheld a capital felony murder conviction where the appellant was found to be legally intoxicated by registering .10 on the breathalizer. There, Novak argued that because he was intoxicated at the time of the crime, he could not have had the requisite intent as a matter of law. In rejecting his argument, we found that there was evidence that Novak was rational and coherent. Further, we stated the fact that Novak was shown to have the minimum intoxication to support a charge of DWI did not establish, as a matter of law, that he lacked the ability to form an intent to commit murder. We held these matters presented a question for the jury to decide.

In our case, Dr. Poteet, who examined Missildine immediately following the killing, testified that Missildine was sleepy but able to communicate with him. When he inquired as to what drugs she had taken, she told him dilantin and phenobarbital. He said that, although her sleepiness was suggestive of it, he found no objective evidence that Missildine had overdosed. From the record, there is evidence from which the jury could find that Missildine was rational and coherent, and that she could have formed the purposeful intent to shoot and kill her daughter.

The jury was instructed on first and second degree murder, and on manslaughter. Based on the record as presented, we conclude that the jury's verdict finding Missildine guilty of first degree murder was based on substantial evidence.

For her second point, Missildine argues that she was assisted ineffectively at trial by her counsel. Attorney Carolyn Lee Whitefield raised the issue following the trial by filing a motion for a new trial and a motion to arrest judgment, alleging that Missildine received incompetent representation at trial from attorney Thomas A. Potter. The trial court denied the motion for

a new trial, finding that "there is no credible proof that [Missildine] did not receive a fair trial."

We first must consider the state's argument that, according to our recent decision in *Tucker* v. *State*, 313 Ark. 624, 855 S.W.2d 948 (1993), Missildine may not claim on direct appeal that her counsel was ineffective. In *Tucker*, the defendant filed a motion for a new trial and, among other things, claimed ineffective assistance of counsel, and after a hearing, the trial court denied the defendant's motion. On appeal, we held Tucker's ineffective counsel claim was premature, because under Rule 37, this court had held that it would not consider collateral attacks on a judgment of conviction as a part of the direct appeal.

■ Although Rule 37 generally provides the procedure for postconviction relief due to ineffective counsel, this court has recognized such relief may be awarded a defendant on direct appeal in limited circumstances. For example, in *Lasiter* v. *State*, *290* Ark. 96, 717 S.W.2d 198 (1986), this court held that, ordinarily we do not consider a charge of ineffectiveness when a case is first appealed because the facts relevant to that issue have not been developed. However, when the proof is presented at a hearing on a motion for a new trial, economy of procedure would require a single appeal of all the issues. *Id.*; *see also Tisdale* v. *State*, 311 Ark. 220, 833 S.W.2d 776 (1992) (the court decided an ineffective assistance of counsel issue on direct appeal because the defendant raised the issue at trial and by a motion for a new trial); *Hilliard* v. *State*, 259 Ark. 81, 531 S.W.2d 463 (1976) (the court recognized that the ineffective counsel issue could be raised and heard by the trial court by defendant's motion for a new trial, but if the accused had not adequate opportunity to raise the question, he could raise the question by motion for postconviction relief).

Because Missildine raised her ineffective counsel issue by motion for new trial and a hearing was conducted on the issue, we conclude it is proper for her to argue this subject on direct appeal. To the extent our *Tucker* holding is in conflict with this decision, that holding is overruled.[3] We now address Missildine's ineffec-

---

[3] Our ruling here does not preclude the defendant in *Tucker* from pursuing a Rule 37 petition for postconviction relief.

tive counsel argument.

The criteria for assessing the effectiveness of counsel has been enunciated in *Strickland* v. *Washington*, 466 U.S. 668 (1984). *Strickland* provides that when a convicted defendant complains of ineffective assistance of counsel, he must show counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, there is a reasonable probability that the jury would have decided differently. Judicial review of counsel's performance must be highly deferential, and a fair assessment of counsel's performance under *Strickland* requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that the conduct falls within the wide range of reasonable professional assistance. Finally, a court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence that was placed before the jury. *Burnett* v. *State*, 310 Ark. 202, 832 S.W.2d 848 (1992); *Cox* v. *State*, 313 Ark. 184, 853 S.W.2d 266 (1993).

Missildine bases her argument on Potter's failure to (1) subpoena expert witness, Dr. Richard Tyler, to testify as to Missildine's mental status; (2) hire an expert psychologist to testify as to her mental status before, during and after the crime; and, (3) in the absence of an psychiatric expert, call members of her own family who were present at the trial.

Mr. Potter testified that it was his intent to subpoena Dr. Tyler as a witness, but did not when the deputy prosecutor told him that the prosecutor's office had already subpoenaed Dr. Tyler. Further, Potter testified that on the morning of the trial, he was informed that the state would not call Dr. Tyler, but that he would be left under subpoena so that Potter could call him. Dr. Tyler did not show up for the trial, and afterwards, Potter learned that Tyler had not been properly served. Deputy prosecutor, Charles Black, denied that he had told Potter that the state planned to call Tyler as a witness, but Black did state that he told Potter the prosecutor's office had mailed a subpoena to Tyler. Missildine's new counsel, Whitefield, did not subpoena Tyler for the post-trial hearing but did attempt to get Missildine's hospital

records entered into evidence. The state objected on the basis that the majority of Tyler's notes in the record were the product of what other doctors and family members had related to him about Missildine, and thus were hearsay. The court agreed, and the records were proffered by Missildine.

While Missildine argues that a psychiatric or psychological expert should have been hired by Potter, she failed to show that such an expert would have testified that she was incompetent or impaired at the time of the crime. Further, testimony showed that Missildine had been examined by the State Hospital, as required due to her defense, and that she was found to be both competent to proceed with trial and competent at the time of the crime. Additionally, there was some testimony regarding whether Potter should have applied $2000 given to him by Missildine's mother for expert testimony rather than to his fee. Again, the state points out that there is no evidence to prove that use of the funds for an expert would have resulted in a different verdict.

Finally, Missildine argued that if Potter had called members of her family, who were present at trial, to testify as to her mental status, the verdict would more probably than not have been different. At the hearing Potter testified that he decided not to call Missildine's mother as a witness because he did not want to open the door for admission of evidence as to Missildine's propensity for violence, namely, shooting at her exhusband and violating her bond because of a fight. Further, he had intended to call a friend of hers as a witness, but decided against it at the last minute because he doubted the man's credibility, and did not want to violate the Rules of Professional Responsibility by offering testimony that Potter did not believe to be the truth. Potter stated that his decisions on these matters were based on trial strategy so as to act in the best interest of his client.

The trial court determined that Missildine received a fair trial and that from the evidence presented at the hearing on the motion for a new trial, all the issues raised were related to trial tactic by the defense attorney. As we have stated before, matters of trial strategy and tactics, even if arguably improvident, are not grounds for a finding of ineffective assistance of counsel. *Burnett v. State*, 310 Ark. 202, 832 S.W.2d 848 (1992); *Hill v. State*, 292 Ark. 144, 728 S.W.2d 510, *cert. den.* 479 U.S. 1101 (1987).

■ Missildine has failed to show that the trial court's ruling was clearly erroneous in denying her motion for a new trial. Further, she has failed to show that her trial attorney's conduct fell below reasonable standards of professional conduct and that, but for her trial attorney's conduct, the verdict would have been different.

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and the objections have all been abstracted and certified by the state. We have found no other rulings adverse to Missildine which constituted prejudicial error.

For the reasons discussed above, we affirm.

BROWN, J., concurs.

· ROBERT L. BROWN, Justice, concurring. I concur in the affirmance but question the wisdom of considering the issue of ineffective counsel on direct appeal when raised by post trial motion.

By permitting this post trial motion, we are thrown right back into the old Rule 36.4 posture. Rather than promoting judicial economy, an incentive is now in place for convicted defendants to shuck trial counsel after trial and either proceed *pro se* or retain new counsel to pursue an ineffectiveness claim as part of post trial relief prior to direct appeal. Which counsel handles the merits of the direct appeal then becomes problematic.

We experimented with Rule 36.4 in 1989 and 1990. In doing so, we authorized post trial hearings on ineffectiveness of defense counsel and permitted joint appeals on that issue and the merits. There were problems with this procedure. The new Rule 37, effective January 1, 1991, was the result. Now we retreat and endorse a hybrid of the Rule 36.4 experiment.

The majority cites *Tisdale v. State*, 311 Ark. 220, 843 S.W.2d 803 (1992), as authority for its position. In *Tisdale*, though, the issue of inadequate counsel was raised during the trial itself:

> However, the record here shows that during his trial, not afterwards, Tisdale requested the court to relieve Robert Scull III from being Tisdale's counsel.

311 Ark. at 227, 843 S.W.2d at 807. We then said that we would review on direct appeal only objections relating to counsel *made at trial*.

The majority also cites a 1986 case as authority — *Lasiter* v. *State*, 290 Ark. 96, 717 S.W.2d 198 (1986). But the *Lasiter* decision in this context constitutes ancient history because it occurred before the Rule 36.4 experiment and before the adoption of our new Rule 37 in 1991.

In my judgment, we intended by the new Rule 37 to eliminate claims of ineffective counsel as part of direct appeals, except when raised during trial which was the situation in *Tisdale* v. *State, supra*. By the majority's decision, we can now anticipate more post trial motions based on ineffective counsel. We can also anticipate more direct appeals relating to inadequate counsel and the associated motions for trial counsel to be relieved and new counsel appointed for purposes of the motion and direct appeal.

In short, I am convinced that ineffectiveness claims are appropriately raised by collateral attack under Rule 37, and I would not consider this issue merely because it was raised by post trial motion. To do so blurs an area of procedure that had been clarified.